IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI,
WESTERN DIVISION

IN RE: AMERICAN ITALIAN PASTA
COMPANY SECURITIES LITIGATION

)
) Case No. 05-0725-CV-W-ODS
)
)
)

REPLY SUGGESTIONS IN SUPPORT OF MOTION OF DEFENDANTS AIPC, GEORGE,
DEAR, PATTERSON, HEETER, BAUM, NIEHAUS, TERENCE O'BRIEN, POLLAK AND
DEMETREE TO DISMISS DERIVATIVE CLAIMS

KC-1396174.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

I.   INTRODUCTION ......................................................................................1

II.  ARGUMENT............................................................................................2

    1.    PLAINTIFFS' CLAIMS ARE STILL SUBJECT
           TO SLUSA PRE-EMPTION ...........................................................2

    2.    PLAINTIFFS CANNOT ESCAPE THE STRINGENT DEMAND
           REQUIREMENT OF DELAWARE LAW WITH CONCLUSORY
           ALLEGATIONS AGAINST THE BOARD ......................................5

         A.    Plaintiffs Fail to Allege Any Specific Facts That
              Would Support A Conclusion That Defendants Face
              A Substantial Likelihood of Liability ........................................7

         B.    Plaintiffs' Additional Allegations Cannot Excuse Their
              Failure to Make a Demand of the Board..................................11

    3.    THE AIPC ARTICLES OF INCORPORATION
           PROTECT THE DEFENDANTS FROM LIABILITY
           FOR BREACH OF FIDUCIARY DUTIES ...................................12

III. CONCLUSION...........................................................................................13

Case 4:05-cv-00725-ODS   Document 169   Filed 05/16/06   Page 2 of 20

# TABLE OF AUTHORITIES

## CASES

PAGE

*Arnold v. Society for Savings Bancorp, Inc.*,
650 A.2d 1270 (Del. 1994) ...................................................................................12

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) .................................................................................9,11

*In re BankAmerica Corp. Sec. Litig.*,
78 F. Supp. 2d 976 (E.D. Mo. 1999)...............................................................12,13

*In re Baxter Int'l*,
654 A.2d 1268 (Del. Ch. 1995)............................................................................13

*Beam v. Stewart*,
845 A.2d 1040 (Del. 2004) ...................................................................................12

*In re Caremark Int'l Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996).......................................................................... 7-8

*Dollens v. Zionts*,
No. 01-C-02826, 2002 WL 1632261 (N.D. Ill. July 22, 2002) ...................................4

*Dudek v. Prudential Securities, Inc.*,
295 F.3d 875 (8th Cir. 2002) ..................................................................................5

*Guttman v. Jen-Hsun Huang*,
823 A.2d 492 (Del. Ch. 2003)...................................................................... 8,9-10

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991)...........................................................................................6,7

*Mehrvar v. Van Heyningen*,
No. N.C./04-0375, 2005 WL 2385939 (R.I. Super. Sept. 27, 2005) .................7,9,12

*In re Oxford Health Plans, Inc. Securities Litigation*,
192 F.R.D. 111 (S.D.N.Y. 2000) .........................................................................10

*Paglin v. Saztec Int'l, Inc.*,
834 F. Supp. 1184 (W.D. Mo. 1993) ......................................................................7

*In re Paxson Commc'n Corp. S'holders Litig.*,
No. Civ. A. 17568, 2001 WL 812028 (Del. Ch. July 12, 2001) .............................12

KC-1396174.1

ii

*Rales v. Blasband,*
  634 A.2d 927 (Del. 1993) ........................................................................................................... 6

*Rattner v. Bidzos,*
  No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) .................................... 8-9,10

*In re Sonus Networks, Inc. Derivative Litig.,*
  No. 040753, 2004 WL 2341395 (Mass. Super. Ct. Sept. 27, 2004) ......................................... 11

*Sung v. Wasserstein,*
  415 F. Supp. 2d 393 (S.D.N.Y. 2006) ....................................................................................... 5

*In re Symbol Tech. Sec. Litig.,*
  762 F. Supp. 510 (E.D.N.Y. 1991) ........................................................................................... 4

*In re The Limited, Inc.,*
  No. Civ. A. 17148-NC, 2002 WL 537692 (Del. Ch. Mar. 27, 2002) ......................................... 6

*In re United Telecomms., Inc. Sec. Litig.,*
  No. 90-2251-EEO, 1993 WL 100202 (D. Kan. Mar. 4, 1993) ................................................... 4

*In re Xcel Energy, Inc.,*
  222 F.R.D. 603 (D. Minn. 2004) ............................................................................................... 9

## STATUTES & RULES

Fed. R. Civ. P. 8 ......................................................................................................................... 5

Fed. R. Civ. P. 9(b) .................................................................................................................... 5

Fed. R. Civ. P. 23.1 .................................................................................................................... 6

Case 4:05-cv-00725-ODS   Document 169   Filed 05/16/06   Page 4 of 20

# I.    INTRODUCTION

Defendant AIPC together with individual defendants Walter N. George, Jerry H. Dear, William R. Patterson, James A. Heeter, Jonathan E. Baum, Robert H. Niehaus, Terence C. O'Brien, Tim Pollak, and Mark C. Demetree, respectfully submit these suggestions in further support of their motion to dismiss the "Derivative Claims" of the Complaint.[1]

In two separate opinions this Court has determined that allegations similar to those contained in the Complaint "are not derivative actions that allege wrongs committed against AIPC by its officers and directors that resulted in compensable damages to AIPC." (Reconsideration Order at 1-2). Plaintiffs simply ignore these orders, failing to even acknowledge them in their opposition papers. Instead, Plaintiffs claim that the "breach of fiduciary duty claims asserted in the Complaint were framed to avoid SLUSA pre-emption." (Pl. Der. Opp. 10). This attempt to replead and recharacterize their derivative claims is both transparent and insufficient. While the language of the Complaint has changed, virtually all of the damages allegations are the same as those contained in the original derivative complaints that this Court consolidated pursuant to SLUSA. There have been no substantive changes in the Complaint that would justify a change in the Court's prior conclusions.

Nor do Plaintiffs succeed in establishing that they were entitled to ignore the predicates of Delaware law in bringing these claims. Delaware law requires shareholders to make a demand of the Board before commencing litigation on behalf of the company. To avoid this procedural requirement a shareholder must show through particularized allegations, that a demand would be futile. Here, Plaintiffs chose not to make a demand on the Board before filing

---

[1] Unless otherwise noted, all abbreviations are the same as those set forth in Defendants' opening suggestions. References to "Def. Der. Br." refer to the Suggestions in Support of Defendants' Motion to Dismiss the Derivative Claims, filed March 7, 2006. And references to "Pl. Der. Opp" refer to Lead and Derivative Plaintiffs Suggestions in Opposition to Motions to Dismiss Counts I-III In Amended Complaint, filed April 5, 2006.

their suit. They argued initially that demand would be futile because there was a substantial likelihood that a majority of the Board would be subject to liability based on the claims they sought to pursue. The allegations in the Complaint do not, however, support such an conclusion. Recognizing this, Plaintiffs now seek to diminish the futility pleading standards imposed by Delaware law. It is Plaintiffs who have chosen to avail themselves of Delaware state corporate law in bringing this action, however, and they cannot now seek to escape its requirements.

Finally, Plaintiffs raise virtually no substantive challenge to Defendants' showing that the terms of the AIPC Articles of Incorporation protect them from the claims brought in the Complaint. For each of these three reasons, the so-called Derivative Claims must be dismissed.

## II. ARGUMENT

### 1. PLAINTIFFS' CLAIMS ARE STILL SUBJECT TO SLUSA PRE-EMPTION

Plaintiffs' opposition papers approach the issue of SLUSA preemption as if they were working from a clean slate. To the contrary, the Court has already rejected Plaintiffs' arguments on this issue two separate times. The Court could not have been clearer in its Consolidation Order when it determined that Plaintiffs' allegations failed to state a derivative claim because they did not "suggest the company lost any money as a result of the alleged misrepresentations that form the focus of the claims." (Consolidation Order at 4). In its Reconsideration Order the Court again explained that Plaintiffs "did not allege the directors and officers did anything to *cause* AIPC's poor financial condition or otherwise damage the company; instead, they allege the directors and officers concealed and misstated facts related to AIPC's poor financial condition." (Reconsideration Order at 1). As a result, Plaintiffs actions "simply are not derivative actions that allege wrongs committed against AIPC by its officers and directors that resulted in compensable damages to AIPC." (*Id.* at 1-2).

KC-1396174.1                                    2

Plaintiffs completely ignore these rulings, neglecting even to mention them in their opposition papers.[2] Instead, Plaintiffs obliquely argue that their Derivative Claims "have been stripped of any claims for damages that overlap those sought in the [securities action] . . . and focus strictly on matters which are recoverable only through the derivative action mechanism." (Pl. Der. Opp. at 3).

Without stating it explicitly, the thrust of Plaintiffs' argument is that the Derivative Claims in the Complaint have been modified sufficiently so as to evade the force of the Court's decision on SLUSA pre-emption. Looking at the alleged derivative damages cited by Plaintiffs, however, they are all either slightly more specific restatements of the very same allegations contained in the original complaints filed by the Derivative Plaintiffs or virtually identical in form to the allegations the Court previously rejected as insufficient to state a derivative claim. None of the modifications are anything more than cosmetic changes.

For example, Plaintiffs claim that the Company was damaged by the costs incurred in conducting the Audit Committee's currently ongoing investigation, the currently ongoing investigation being conducted by the Securities and Exchange Commission, and the cost of defending the very securities actions brought in the Complaint. (*See* Pl. Der. Opp. at 2). While the language and form of these allegations may have changed, they are substantively identical to Plaintiffs' original damages based on "[c]osts incurred to carry out internal investigations" and "[c]osts and legal fees for defending AIPC . . . against private class action litigation." (*See*

---

[2] It is worth noting that Plaintiffs also ignore the Consolidation Order by retaining parties previously rejected by the Court. The Consolidation Order did not provide for an amended filing by the so-called "Derivative Plaintiffs" who filed Plaintiffs' opposition and are named in the Complaint. (*See, e.g.*, Pl. Der. Opp. at 1 ("Derivative Plaintiffs Rolf Fasth and Ronald Corallo submit these suggestions . . . .); Complaint at ¶ 22). The Consolidation Order named the Iron Workers' Local as lead plaintiff, after considering and rejecting Mr. Corallo as a potential lead plaintiff. (Consolidation Order at 9). Mr. Fasth had previously withdrawn from consideration as a lead plaintiff. (Consolidation Order at 8 n.2). This was the correct decision, as the Court had determined that no valid derivative claim had been alleged and that SLUSA and the PSLRA required all litigation regarding AIPC stock to be "litigated in one forum and in one suit." (Consolidation Order at 4).

Case 4:05-cv-00725-ODS   Document 169   Filed 05/16/06   Page 7 of 20

Corallo Complaint, filed Oct. 20, 2005 at ¶ 77; *see also* Fasth Complaint, filed Oct. 5, 2005 at ¶¶ 91, 106). Likewise, the current Complaint seeks to recover for "damage to the Company caused by insider sales of Company stock" and "excessive compensation bonuses the Company paid to AIPC's officers" based on the allegedly fraudulently stated results. (Pl. Der. Opp. at 2). Both of these so-called derivative claims were contained in the complaints rejected by this Court. (*See* Corallo Complaint, filed Oct. 20, 2005 at ¶¶ 92, 96; *see also* Fasth Complaint, filed Oct. 5, 2005 at ¶¶ 106, 110).

These restated allegations in no way alter the Court's conclusion that Plaintiffs do not "suggest the company lost any money as a result of the alleged misrepresentations that form the focus of the claims." (Consolidation Order at 4). In addition, courts have routinely rejected derivative damage allegations based on speculation about the outcome of pending litigation. Where, as here, such damage allegations "hinge entirely on the outcome of another pending action," the purported derivative action is "more appropriately treated as an action for indemnification, which has not yet accrued yet." *In re Symbol Tech. Sec. Litig.*, 762 F. Supp. 510, 516-17 (E.D.N.Y. 1991); *see also In re United Telecomms. Sec. Litig.*, No. 90-2251-EEO, 1993 WL 100202, at *3 (D. Kan. Mar. 4, 1993) ("Where, as here, the claim of damages is contingent upon the outcome of a separate, pending lawsuit, the claim is not ripe and the complaint must be dismissed."); *Dollens v. Zionts*, No. 01-C-02826, 2002 WL 1632261, at *9 (N.D. Ill. July 22, 2002) ("[P]laintiffs cannot bring a derivative action to recover expenses from a pending securities action . . . until the case has proceeded to final judgment or settlement.")

Nor can Plaintiffs resurrect their derivative suits by relying on allegations in the Complaint that AIPC improperly wrote-off excess and unsold pasta inventory. (*See* Pl. Der. Opp. at 2, citing Compl. at ¶¶ 81-82). The Complaint alleges that the Company failed to write-

Case 4:05-cv-00725-ODS   Document 169   Filed 05/16/06   Page 8 of 20

off excessive and unsold inventory in a timely manner, thus misstating AIPC's income. (*See* Compl. at 82(e) ("If AIPC had written off this excess off, its pre-tax income would have been cut nearly in half from the $86 million that was reported during that time-frame.")). As the Court explained, such allegations do not "allege the directors and officers did anything to *cause* AIPC's poor financial condition or otherwise damage the Company; instead, they allege the directors and officers concealed and misstated facts related to AIPC's poor financial condition." (Reconsideration Order at 1). In other words, this Court has already examined the "essence" and "gravamen" of the allegations contained in the Complaint and determined that they fail to state a derivative claim. *Dudek v. Prudential Securities, Inc.*, 295 F.3d 875, 879-80 (8th Cir. 2002). Plaintiffs cannot with this repleading avoid SLUSA preemption and dismissal by "artfully concealing the federal question in an otherwise well-pleaded complaint under state law." *Id.* at 879.[3]

### 2. PLAINTIFFS CANNOT ESCAPE THE STRINGENT DEMAND REQUIREMENT OF DELAWARE LAW WITH CONCLUSORY ALLEGATIONS AGAINST THE BOARD

While Plaintiffs do not, and indeed cannot, dispute that Delaware law applies to their allegations of demand futility, they nevertheless seek to diminish the impact of those standards by claiming that their allegations are subject to no more stringent pleading requirements than any other claim. Plaintiffs begin by arguing that their derivative claims are governed by the pleading requirements of Federal Rule of Civil Procedure 8 rather than the more stringent pleading requirements of Rule 9(b). (*See* Pl. Der. Opp. at 13-14). This is a red herring. Defendants never

---

[3] In light of Plaintiffs' failure to properly allege derivative damages, the remaining cases they cite are inapposite. They stand for the unremarkable proposition that SLUSA does not apply to state action derivative claims that "properly allege damage to the corporation." (Pl. Der. Opp. at 12). For example, in one case cited by Plaintiffs the court found that all of the causes of action alleged in the complaint were "classic state causes of action." *Sung v. Wasserstein*, 415 F. Supp. 2d 393, 405 (S.D.N.Y. 2006). Here, the Court has explicitly (and repeatedly) determined otherwise.

Case 4:05-cv-00725-ODS   Document 169   Filed 05/16/06   Page 9 of 20

claimed that Rule 9(b) applied to Plaintiffs' demand allegations. Rather, the operative provision of the Federal Rules is Rule 23.1. While Plaintiffs mention this rule in passing, they completely fail to discuss its substance. Instead, Plaintiffs state, based solely on their *ipse dixit* that "[p]leading futility is not nearly as difficult as Defendants insist." (Pl. Der. Opp. at 14).

To the contrary, Rule 23.1 requires any potential derivative plaintiff who fails to make a demand of the board to "allege with particularity . . . the reasons for the plaintiff's failure . . . for not making the effort." Fed. R. Civ. P. 23.1. In addition, under Delaware law, a shareholder plaintiff bears a "heavy burden" to establish demand futility. *In re The Limited, Inc.*, Civ. A. No. 17148-NC, 2002 WL 537692, at *3 (Del. Ch. Mar. 27, 2002). The "'heavy burden' of pleading demand futility is a substantive component of a plaintiff's case and, as such, the failure to meet [this burden] ends the court's inquiry before it can even address the merits." *Id.*

Under Delaware law, directors are afforded a "powerful presumption" that they act in the best interests of the corporation and it is the directors, not individual shareholders, who are entitled to determine whether, and when, to institute litigation on the corporation's behalf. *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). Only as "an action of last resort," is a shareholder permitted to usurp this directorial power and himself bring suit on the company's behalf. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95-96 (1991). At a minimum, under Rule 23.1, before a shareholder may commence a derivative action, he must first make a demand on the corporation or show, with particularity, that demand was excused "by extraordinary conditions." *Kamen*, 500 U.S. at 95-96.

Conclusory allegations like those contained in the Complaint are insufficient to meet this standard. With respect to a majority of the directors, Plaintiffs offer no specific allegations that they were involved in or had specific knowledge of: (i) the alleged fraud underlying these

actions, (ii) the specific transactions and business decisions at issue, or (iii) even the day-to-day operations of the Company. (*See* Def. Der. Br. at 5-6, 13-16). Instead, Plaintiffs rely on boilerplate allegations that the board of directors must have known of the fraud because they were directors and cannot fairly assess the Company's position because they are named in the instant action. If demand futility allegations were that simple, the mechanisms of Rule 23.1 would be eviscerated, as virtually every AIPC shareholder could avoid making a demand of the Board and direct the affairs of the Company simply by alleging that the directors are liable. To the contrary, Rule 23.1 "imposes stricter pleading requirements than the usual requirement that the allegations of the complaint must only give fair notice of a claim," *Paglin v. Saztec Int'l, Inc.*, 834 F. Supp. 1184, 1201 (W.D. Mo. 1993) (internal quotes and alterations omitted), and therefore conclusory allegations like those in the Complaint are simply insufficient.[4]

### A. Neither Plaintiffs' Complaint Nor Their Opposition Papers Offer Sufficiently Specific Facts To Support A Conclusion That Defendants Face A Substantial Likelihood of Liability

Plaintiffs' primary basis for claiming that demand on the board would be futile continues to be that each director faces a "substantial likelihood of liability." In the Complaint, Plaintiffs alleged that demand was excused based on their failure to adequately oversee the affairs of the Company; so-called *Caremark* claims. (*See generally* Def. Der. Br. at 13, *citing In re Caremark Int'l Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996)). Recognizing that such a claim represents "the most difficult theory in corporation law upon which a plaintiff might hope to win a

---

[4] The boilerplate nature of Plaintiffs' demand futility arguments is highlighted by the fact that large portions of their opposition papers have been copied wholesale from a brief submitted by counsel to Messrs. Corallo and Fasth in another matter currently pending in federal court in the District of Rhode Island. (*See* Plaintiff's Brief, *Ji v. Van Heyningen*, Civ. No. 05-273-ML, 2006 WL 820126, filed in D.R.I. Feb. 27, 2006). That action had previously been dismissed by a Rhode Island state court for failure to adequately allege demand futility. *Mehrvar v. Van Heyningen*, No. 04-0375, 2005 WL 2385939, at *6 (R.I. Super. Sept. 27, 2005) ("it is apparent that the Plaintiff has failed to allege, with the required particularity, facts that would support a conclusion that a pre-suit demand would have been futile").

judgment," *Caremark*, 698 A.2d at 967, Plaintiffs have supplemented their allegations in their opposition papers, and now argue that because a majority of the directors are named as defendants in the securities claims currently pending before the Court, that those directors are not "disinterested." (Pl. Der. Opp. at 17-18). Regardless of the theory, the allegations in the Complaint are insufficient to support a determination that a majority of the Board faces a substantial likelihood of liability.[5]

Plaintiffs argue that a majority of the Board – seven of nine members – are facing a substantial likelihood of liability for security fraud either because they served on the Audit Committee or because they "signed fraudulent financial reports filed with the SEC." (Pl. Der. Opp. at 17). The Complaint offers no details on how the seven independent directors were or should have been aware of accounting manipulations alleged in the Complaint, much less participated in them. (Def. Der. Br. at 14). Nor do Plaintiffs allege any facts showing that the seven directors even had knowledge of the day-to-day operations of AIPC. (*Id.*) In fact, the seven directors hardly appear in the Complaint and are only named when they are first identified as defendants, and again in Plaintiffs' demand futility allegations. (*Id.*) In the end, Plaintiffs' security fraud allegations are limited to the directors' positions on the board and signatures on securities filings.

Alleging that a director knows undisclosed adverse matters by virtue of his position alone is insufficient to establish demand futility. *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL

---

[5] Plaintiffs also allege that Messrs. Schroeder and Webster have a disabling interest in the litigation because they purportedly engaged in insider trading. (*See* Pl. Der. Opp. at 24-27). Because these two members alone do not constitute a majority of the Board, any alleged disability is insufficient to excuse demand. In addition, Delaware courts have found that in a derivative action, insider-trading allegations require particularized allegations of fraudulent intent by the selling insider. A plaintiff is required to demonstrate that "each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." *Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 505 (Del. Ch. 2003). Such allegations are absent from the Complaint.

22284323, at 10 n.53 (Del. Ch. Sept. 30, 2003). If a court allowed a plaintiff shareholder to usurp the control of the board on such allegations, "the demand requirements of our law would be meaningless." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984); *see also Mehrvar*, 2005 WL 2385939, at *4 ("Delaware law, however, has specifically found that it is insufficient for a plaintiff to be excused from the demand requirement solely by pleading that a director, by virtue of his or her position, must be charged with knowledge of wrongful conduct."); *In re Xcel Energy, Inc.*, 222 F.R.D. 603, 607 (D. Minn. 2004) (looking to Delaware law for guidance) (holding that generalized statements that Audit Committee members "knew or should have known" of false statements did "not constitute facts pleaded with particularity").

Likewise, the minimal allegations in the Complaint cannot support a finding that a majority of the Board face a substantial likelihood of liability on the allegations of breach of fiduciary duty underlying the derivative claims themselves. Again, the sole basis of liability for the members of the Audit Committee stated in the Complaint is the "enhanced responsibilities" of that Committee. (*See* Def. Der. Br. at 16-17). There are no allegations tying these duties to any alleged harm to the Company. Plaintiffs do seek to impute knowledge of the purported fraudulent scheme to the Audit Committee by cobbling together allegations that the Company's outside auditors received "whistleblower" letters and the fact that the Audit Committee met with those same auditors. (Pl. Der. Opp. at 20-21). Nowhere, however, do Plaintiffs allege that the Audit Committee actually had knowledge of the whistleblower's allegations.

Plaintiffs fail to allege, as they must under *Caremark* and Delaware law, that the directors acted in bad faith and knowingly failed to do their jobs. *Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 506 (Del. Ch. 2003) (finding no substantial likelihood of liability where there were no "particularized allegations of fact detailing the precise roles that these directors played at the

company, the information that would have come to their attention in those roles, and any

indication as to why they would have perceived the accounting irregularities"); *Rattner,* 2003

WL 22284323 at *12 (demand not excused because there was no pleading of particularized facts

regarding the board's own "involvement in the preparation of" allegedly fraudulent financial

statements).

Plaintiffs' citation to *In re Oxford Health Plans, Inc. Securities Litigation,* 192 F.R.D.

111 (S.D.N.Y. 2000), is instructive in so far as it demonstrates the nature and scope of

allegations necessary to establish a substantial likelihood of liability. In *Oxford Health Plans*,

the plaintiffs established a substantial likelihood of liability by alleging that "the Director

Defendants were aware of the problems" and proceeded to act despite that knowledge. *Id* at 115.

That knowledge allegedly came to the directors attention through investigations conducted by the

New York State Attorney General's Office and the New York State Insurance Department.

Oxford continued to report the it was profitable even after the Insurance Department fined

Oxford $3 million, ordered the Company to increase its reserves by $50 million, terminate its

CFO, and remove or replace certain of it independent auditors. *Id.* at 137-38. Subsequent to the

investigations, Oxford announced that it had to increase its accounting reserves by $164 million

and recorded a net loss for the year. *Id*, at 138-39. One director was alleged to have been

informed of the specific computer problems that contributed to the company's accounting

problems, and certain members of the board held an emergency meeting to hire a third party to

fix those problems. In short, the Oxford complaint contained precisely the sorts of details

missing from Plaintiffs' Complaint.

## B. Plaintiffs' Additional Allegations Cannot Excuse Their Failure to Make a Demand of the Board

Plaintiffs also argue that demand is excused because two of the seven outside directors – Messrs. Heeter and Baum – are insufficiently independent based on their connections to the Company and the Board.[6] Specifically, Plaintiffs argue that Mr. Heeter's law firm and Mr. Baum's investment bank have "lucrative" financial relationships with AIPC. (Pl. Der. Opp. at 28). Plaintiffs also contend that Mr. Baum was a member of an "investment group" with certain Company insiders and others, including Morgan Stanley and Citicorp. (Pl. Der. Opp. at 29). None of these allegations, even if true, are sufficient to establish demand futility.[7]

As a matter of Delaware law, a board of directors does not lose its independence merely because there are overlapping business and financial relationships between the directors. "There is nothing sinister or corrupt in the single fact of association or affiliation in financial matters. There must be some further fact before there is anything wrong about it." *In re Sonus Networks, Inc. Derivative Litig.*, No. 040753, 2004 WL 2341395, at *2 (Mass. Super. Ct. Sept. 27, 2004) (applying Delaware law). Therefore, under Delaware law, for a plaintiff to adequately allege that the directors' "personal or other relationships" vitiate independence, the complaint must demonstrate not just that the directors have some relation with one another (as they often do), but that the directors "are beholden" to one another. *See Aronson*, 473 A.2d at 815.

---

[6] Plaintiffs also claim that the independence of the Board is undermined by Richard Thompson's connections to the Company. (Pl. Der. Opp. at 27-29). As shown in Defendants' opening brief (and as stated in Plaintiffs' Complaint and opposition papers), Mr. Thompson was not a member of the Board at the time the derivative complaints were filed. (*See* Def. Der. Br. at 3 n.3; *see also* Compl. ¶42; Pl. Der. Opp. at 5-6). Therefore, any alleged lack of independence on the part of Mr. Thompson is irrelevant to the question of demand futility. (*See* Def. Der. Br. at 12 n.8).

[7] Many of the allegations are incorrect. For example, Plaintiffs' characterization that Mr. Heeter's firm served as "AIPC's general counsel since its inception," is incorrect. Neither Mr. Heeter nor his firm have served as counsel to the Company since he joined the Board in 1999. Likewise, neither Mr. Baum nor his company have earned fees from AIPC in recent years.

Allegations of interconnected business relationships, like those in the Complaint, are simply insufficient to establish that members of the board are "beholden," and hence cannot excuse demand. *In re Paxson Commc'n Corp. S'holders Litig.*, No. 17568, 2001 WL 812028, at *10 (Del. Ch. July 12, 2001) (allegations that board members "have close personal and business ties with each other" are too conclusory to prove anything under the strict pleading requirements of Rule 23.1); *Beam v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004) (stating that "[a]llegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence."); *Mehrvar*, 2005 WL 2385939, at *6 ("the mere general allegation that one or more directors have personal or business affiliations with one another is insufficient to excuse demand").

### 3. THE AIPC ARTICLES OF INCORPORATION PROTECT THE DEFENDANTS FROM LIABILITY FOR BREACH OF FIDUCIARY DUTIES

Plaintiffs do not contest that the AIPC Articles of Incorporation exempt the Company's directors from personal liability for monetary damages arising from a breach of their fiduciary duties. (*See* Def. Der. Br. at 17, 20). Nor do Plaintiffs meaningfully dispute that to state a claim against the Board, they must therefore allege "facts supporting an inference that defendants breached their duty of loyalty to the corporation or knowingly or deliberately failed to disclose facts they knew were material." *In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 992-93 (E.D. Mo. 1999) (*citing Arnold v. Society for Savings Bancorp, Inc.*, 650 A.2d 1270, 1288 (Del. 1994)).

Recognizing that their Complaint fails to raise any such allegations against the Defendants, they seek to conflate their allegations against inside members of the Board with the seven outside directors. (*See* Pl. Der. Opp. at 30). To be clear, there are no allegations that any

of the outside directors participated in, or was even aware of the alleged wrongdoings.

Therefore, as a matter law, the directors are exempted from liability.[8] *See In re BankAmerica Corp.*, 78 F. Supp. 2d at 1001 ("The plaintiffs, however, have not adequately pled that the non-officer directors knew of the alleged omissions and false statements. Consequently, they have not adequately pled bad faith as to these defendants.").

### III. CONCLUSION

For the reasons given above and in Defendants' opening papers, the motion to dismiss the derivative claims should be granted without leave to amend, and the claims dismissed with prejudice.

Respectfully submitted,

By:   /s/ Brian D. Martin
      _____
      Michael Thompson        MO #22153
      Michael C. Phillips      MO #40581
      Brian D. Martin          MO #42245
      Blackwell Sanders Peper Martin LLP
      4801 Main Street, Suite 1000
      Kansas City, MO 64112
      PH: 816-983-8000
      FX: 816-983-8080

                        -and-

---

[8] In addition, because of this provision in the AIPC Articles of Incorporation, the members of the Board do not face a substantial likelihood of liability sufficient to excuse demand. (*See* Def. Der. Br. at 17, *citing In re Baxter Int'l*, 654 A.2d 1268, 1269 (Del. Ch. 1995) ("When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption.")).

James H.R. Windels (*pro hac vice*)
Edmund Polubinski III (*pro hac vice*)
Kevin C. Wallace
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
PH: 212-450-4000
FX: 212-450-3800


Attorneys for defendants American Italian
    Pasta Company, George, Dear, Patterson,
    Heeter, Baum, Niehaus, Terence O'Brien,
    Pollak and Demetree

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2006 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which sent notification of such filing to the following:

Kent T. Perry
Gregory M. Dennis
Kent T. Perry & Co.
7300 W. 110th Street, Suite 260
Overland Park, KS 66210

Marc I. Gross
Stanley M. Grossman
Pomerantz Haudek Black Grossman & Gross, LLP
100 Park Avenue, 26th Floor
New York, NY 10017

Attorneys for plaintiff

Charles W. German
William D. Beil
Brandon Boulware
Rouse Hendricks German May PC
1010 Walnut, Suite 400
Kansas City, MO 64106

Attorneys for defendant Horst W. Schroeder

Jean Paul Bradshaw
Lathrop & Gage LC
2345 Grand Boulevard, Suite 2800
Kansas City, MO 64108

Attorney for defendant Warren B. Schmidgall

James L. Eisenbrandt
Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP
4121 West 83rd Street, Suite 259
Prairie Village, KS 66208

Nick J. Kurt
David F. Oliver
Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP
Two Emanuel Cleaver II Boulevard, Suite 500
Kansas City, MO 64112

Attorneys for defendant George D. Shadid

John M. Kilroy, Jr.
Mark A. Olthoff
Shughart Thomson & Kilroy PC
1600 Twelve Wyandotte Plaza
120 West 12th Street
Kansas City, MO 64105

Attorneys for Ernst & Young

W. Perry Brandt
Fred L. Sgroi
Bryan Cave LLP
One Kansas City Place
1200 Main Street
Kansas City, MO 64105

John Michael Clear
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Attorneys for defendant Timothy S. Webster

Mark A. Thornhill
Spencer Fane Britt and Browne LLP
1000 Walnut Street, Suite 1400
Kansas City, MO 64106

Attorney for defendant Richard C. Thompson

Richard F. Adams
Slagle, Bernard & Gorman
4600 Madison
600 Plaza West Building
Kansas City, MO 64112

Attorney for defendant John P. O'Brien

                       /s/ Brian Martin
                       Attorney